# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**JEROME RICHARD BIRDSONG, II,**<br><br>    **Defendant.** | Case No. 15-20045-01-JAR |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Jerome Birdsong's Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) (Doc. 45). For the reasons provided below, Birdsong's motion is denied.

## I.   Background

On January 25, 2016, Birdsong pled guilty to one count of conspiracy to possess with intent to distribute more than 500 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 pursuant to a Fed. R. Crim. P. 11(c)(1)(C) plea agreement.[1] On May 26, 2016, the Court sentenced Birdsong to a term of 144 months' imprisonment, a five-year term of supervised release, and a $100 special assessment.[2]

Birdsong is currently incarcerated at FCI Big Spring in Texas. As of December 11, 2020, the Bureau of Prisons ("BOP") reports that 811 inmates have tested positive for COVID-19, 961 inmates have been tested, and three tests are pending at this facility.[3] There are ninety-one active

---

[1] Doc. 26.

[2] Doc. 35.

[3] Federal Bureau of Prisons, *COVID-19 Coronavirus: COVID-19 Cases*, https://www.bop.gov/coronavirus (last visited Nov. 25, 2020).

inmate cases, six staff cases, and three inmate deaths.[4]  Birdsong is thirty-nine years old, and his projected release date is September 8, 2025.

On July 17, 2020, Birdsong filed a motion for relief under 28 U.S.C. § 2255, alleging Sixth Amendment right to counsel violations.[5]  That motion remains pending.

On October 13, 2020, Birdsong filed a motion for compassionate release.[6]  He states that he tested positive for COVID-19 on September 14, 2020 and that he is experiencing symptoms, including "a fever that comes and goes," body aches, chills, "sweat flashes," shortness of breath, "constant headaches, [] a cloudy thought process," and a loss of his sense of taste and smell.[7]  Birdsong also states that he has had liver and pancreas issues in the past, currently suffers from a tooth infection, and has "trouble with [his] left eye," making him particularly vulnerable to COVID-19 complications.[8]  With his motion, Birdsong includes a yet-unverified release plan, indicating he would reside with his brother's family in Kansas City, Kansas.[9]  The government asserted in its response that Birdsong had not satisfied the exhaustion requirement because there was no evidence that Birdsong submitted a compassionate release request to the warden.[10]  Birdsong, however, filed a supplement on November 25, 2020, in which he provides his compassionate release request to the warden, and the warden's denial of that request, to the

---

[4] *Id.*

[5] Doc. 39.

[6] Doc. 45.

[7] Doc. 45-1 at 1–2.

[8] *Id.* at 2–3.

[9] *Id.* at 1.

[10] Doc. 49.

2

Court.[11]  Then, on December 8, 2020, the government filed a supplemental response addressing the merits of Birdsong's motion.[12]

Under Standing Order 19-1, the Federal Public Defender ("FPD") was appointed to represent indigent defendants who may qualify to seek compassionate release under section 603(b) of the First Step Act.  That Order was supplemented by Administrative Order 20-8, which established procedures to address motions brought on grounds related to the COVID-19 pandemic.  Under that Order, the FPD shall notify the court within 15 days of any *pro se* individual filing a compassionate release motion whether it intends to enter an appearance on behalf of the defendant, or whether it seeks additional time to make such determination.  The FPD has notified the Court that it does not intend to enter an appearance in Birdsong's case.  Accordingly, Birdsong proceeds *pro se*.

## II.    Legal Standard

"[I]t is well-settled that '[a] district court is authorized to modify a [d]efendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so.'"[13]  Section 3582(c) permits a court to modify a term of imprisonment for compassionate release only if certain exceptions apply.  Until recently, these exceptions required the BOP to move on a defendant's behalf.  In 2018, however, the First Step Act modified the compassionate release statute, permitting a defendant to bring his own motion for relief.[14]  But a defendant may bring a motion for compassionate release from custody only if he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf or the

---

[11] Doc. 51.

[12] Doc. 53.

[13] *United States v. White*, 765 F.3d 1240, 1244 (10th Cir. 2014) (quoting *United States v. Blackwell,* 81 F.3d 945, 947 (10th Cir. 1996)).

[14] First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018).

lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."[15]  Unless a defendant meets this exhaustion requirement, the court lacks jurisdiction to modify the sentence or grant relief.[16]

Where a defendant has satisfied the exhaustion requirement, a court may reduce the defendant's proposed sentence, after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable, if the court determines: (1) "extraordinary and compelling reasons warrant such a reduction"; or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c) . . . and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community."[17]  In addition, a court must ensure that any reduction in a defendant's sentence under this statute is "consistent with applicable policy statements issued by the Sentencing Commission."[18]

The Sentencing Commission's policy statement pertaining to sentence reductions under 18 U.S.C. § 3582(c)(1)(A) is found at U.S.S.G. § 1B1.13.  The comments to § 1B1.13 contemplate four categories of extraordinary and compelling circumstances: (1) the defendant is suffering from a terminal illness, i.e., a serious, advanced illness with an end-of-life trajectory;

---

[15] 18 U.S.C. § 3582(c)(1)(A).

[16] *United States v. Johnson*, 766 F. App'x 648, 650 (10th Cir. 2019) (holding that without an express statutory authorization, a court lacks jurisdiction to modify a sentence); *see also United States v. Walker*, No. 13-10051-EFM, 2020 WL 2101369, at *2 (D. Kan. May 1, 2020) ("The administrative exhaustion requirement is jurisdictional and cannot be waived."); *United States v. Read-Forbes*, 454 F. Supp. 3d 1113, 1116–17 (D. Kan. 2020) (analyzing the text, context, and historical treatment of § 3582(c)'s subsections to determine the exhaustion requirement is jurisdictional).  *Cf. United States v. Younger*, No. 16-40012-DDC, 2020 WL 3429490, at *3 (D. Kan. June 23, 2020) (reasoning that, absent direct guidance from the Tenth Circuit, the Sixth Circuit's approach articulated in *United States v. Alam*, 960 F.3d 831 (6th Cir. 2020), is "highly persuasive," and concluding that § 3582(c)(1)(A)'s exhaustion requirement is a claims-processing rule).

[17] 18 U.S.C. § 3582(c)(1)(A).

[18] *Id.*; *see also Dillon v. United States*, 560 U.S. 817, 819 (2010) (holding the Sentencing Commission policy statement regarding 18 U.S.C. § 3582(c)(2) remains mandatory in the wake of *United States v. Booker*, 543 U.S. 220 (2005)).

4

(2) the defendant is suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which the defendant is not expected to recover; (3) the defendant is at least sixty-five years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least ten years or seventy-five percent of the term of imprisonment, whichever is less; and (4) the defendant needs to serve as a caregiver for a minor child, spouse, or registered partner.[19] A defendant requesting compassionate release bears the burden of establishing that compassionate release is warranted under the statute.[20]

## III. Discussion

### A. Exhaustion

Defendant requested compassionate release from the warden at FCI Big Spring on September 27, 2020, which the warden received on October 22, 2020 and denied on November 5, 2020. While less than thirty days had lapsed from the time the warden received his request when Birdsong filed this motion, more than thirty days have now lapsed.[21] Accordingly, the Court will consider Birdsong's motion on the merits.

---

[19] U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1 (U.S. Sentencing Comm'n 2018).

[20] *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016) (finding that defendant bears the burden of demonstrating entitlement to relief under § 3582(c)(2)); *United States v. Bright*, No. 14-10098-JTM, 2020 WL 473323, at *1 (D. Kan. Jan. 29, 2020) (noting that the "extraordinary and compelling" standard imposes a heavy burden on an inmate seeking compassionate release under § 3582(c)(1)(A)).

[21] *See United States v. Fraenchot Deon Banks*, No. 2:11-CR-4-5, 2020 WL 3145691, at *2 (D.N.D. June 12, 2020) (finding that, despite the defendant's failure to comply with § 3583(c)(1)(A)'s 30-day lapse requirement at the time the defendant filed his compassionate release motion, "the issue is moot because more than 30 days have now passed" and "[d]ismissing the motion without prejudice for failure to comply with the statute's exhaustion regime would be a meaningless exercise considering [the defendant] could simply refile an identical motion today in compliance with the 30-day waiting requirement"). Moreover, the government does not dispute that Birdsong has satisfied the exhaustion requirement on this basis. Instead, the government argues that Birdsong has not satisfied the exhaustion requirement because the grounds identified in his request for compassionate release to the warden do not

B.      **Extraordinary and Compelling Reasons**

Having determined that Birdsong has properly exhausted his administrative remedies, the Court must next determine whether extraordinary and compelling reasons warrant reducing Birdsong's sentence to time served.  Congress permitted the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."[22]  The Sentencing Commission, in its commentary to U.S.S.G. § 1B1.13, has enumerated four categories of circumstances which may constitute extraordinary relief.[23]

Here, Birdsong asserts that his underlying health conditions, coupled with the outbreak of COVID-19 in prison, make him more susceptible to serious illness or death should he contract COVID-19, and he has contracted COVID-19.  In particular, he states that he has a tooth infection and "trouble with his left eye," and he believes that COVID-19 "will leave [him] really in a bad way" because of "liver trouble [he] ha[s] had in [his] past" and "pancreas problems [he] ha[s] had."[24]  Birdsong also states that he was burned when he was younger, which caused second- and third-degree burns on most of his face and body, and he therefore "wonder[s] how [his] lungs are now."[25]  The government acknowledges that if an inmate has a chronic medical condition that has been identified by the Centers for Disease Control and Prevention as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may constitute an

---

mirror the grounds upon which he now seeks compassionate release.  As this Court previously determined, however, "a judicially created issue-exhaustion requirement is inappropriate" because the administrative process for compassionate release is inquisitive rather than adversarial.  *United States v. Parada*, No. 5:03-40053-JAR-1, 2020 WL 4589781, at *4–5 (D. Kan. Aug. 10, 2020) (quoting *Sims v. United States*, 530 U.S. 103, 111 (2000)).  As such, Birdsong's September 27 compassionate release request to the warden satisfies the exhaustion requirement.

[22] 28 U.S.C. § 994(t).

[23] U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1 (U.S. Sentencing Comm'n 2018).

[24] Doc. 45-1 at 2–3.

[25] *Id.* at 4.

extraordinary and compelling circumstance. The government contends, however, that Birdsong's underlying medical conditions fall short of establishing the level of severity required under the policy statement. The Court agrees.

Though Birdsong references pancreas and liver issues he experienced in the past, he does not specify what those issues were, nor does he indicate whether he still suffers from any pancreas or liver issues. Birdsong also does not explain what trouble he is experiencing with he left eye. Similarly, while he expresses concern about his lungs, he does not state any lung-related complaints. As the government points out, aside from Birdsong's confirmed COVID-19 diagnosis and an amoxicillin prescription for a decayed molar, his BOP medical records do not identify any other current medical conditions.[26] Thus, Birdsong has not reported that he has a medical condition exacerbating the virus's effect on him.

As noted, Birdsong tested positive for COVID-19 in mid-September 2020, nearly three months prior to the Court's ruling. Based on current scientific medical information, the Court cannot determine the likelihood that Birdsong could be re-infected. Individuals infected by certain other viruses have some degree of immunity against future infection, though the strength and the length of immunity varies based on the virus and the individual.[27] Though the Court recognizes that information regarding COVID-19 is rapidly developing, there appears to be evidence suggesting recovery from COVID-19 confers some level of immunity against re-infection.[28] The Court is not in a position to make definitive conclusions about immunity to

---

[26] Doc. 53 at 6.

[27] *See* Thomas J. Braciale & Young S. Hahn, *Immunity to Viruses*, Immunological Reviews at 5 (2013), https://doi.org/10.111/imr.12109; *see also* Taiki Aoshi, et al., *Innate and Adaptive Immune Responses to Viral Infection and Vaccination*, Current Opinion in Virology at 226 (2011), https://doi.org/10.1016/j.coviro.2011.07.002.

[28] *See, e.g.*, Robert D. Kirkcaldy et al., *COVID-19, Postinfection Immunity Limited Evidence, Many Remaining Questions*, J. AM. MED. ASS'N, at 2246 (2020), https://jamanetwork.com/journals/jama/fullarticle/2766097 ("[E]xisting limited data on antibody responses to SARS-CoV-2 and related coronaviruses, as well as one small animal model study, suggest that recovery from COVID-19 might confer immunity against reinfection, at least

COVID-19, but the possibility of developing some degree of immunity cannot be ignored in consideration of whether there are extraordinary and compelling reasons warranting a reduction of his sentence.[29]

Finally, Birdsong complains of the conditions at FCI Big Spring, stating that COVID-19 "is spreading like wild fire[]" and it is impossible for inmates to practice social distancing—"just being here is like living in a casket."[30]  While the Court is sympathetic to Birdsong's concerns, generalized concerns about COVID-19, even when the virus has spread within a correctional facility, do not create the type of extraordinary and compelling circumstances sufficient to justify compassionate release.[31]

Without question, it is regrettable that Birdsong is incarcerated in a BOP facility at a time when the COVID-19 pandemic is rampant nationwide.  It is equally regrettable that he has contracted COVID-19.  The Court is not convinced, however, that the conditions he finds himself in qualify him for a reduction of his 144-month sentence to time served.

---

temporarily.  However, the immune response to COVID-19 is not yet fully understood and definitive data on postinfection immunity are lacking."); Francis Collins, *Study Finds Nearly Everyone Who Recovers From COVID-19 Makes Coronavirus Antibodies*, NIH Director's Blog (May 7, 2020), https://directorsblog.nih.gov/ 2020/05/07/study-finds-nearly-everyone-who-recovers-from-covid-19-makes-coronavirus-antibodies ("Although more follow-up work is needed to determine just how protective these antibodies are and for how long, these findings suggest that the immune systems of people who survive COVID-19 have been primed to recognize SARS-CoV-2 and possibly thwart a second infection.").

[29] *See United States v. Billings*, No. 19-CR-00099-REB, 2020 WL 4705285, at *5 (D. Colo. Aug. 13, 2020) ("[I]t is not yet known whether having been infected with the COVID-19 virus confers immunity from reinfection, although there is some evidence suggesting recovered individuals may have at least temporary immunity.  At this point, however, the possibility of reinfection, if not impossible, is strictly hypothetical.  That uncertainty militates against compassionate release."); *United States v. Garciduenas-Escamilla*, No. 3:19-4899, 2020 WL 2306606 (S.D. Cal. May 8, 2020) (holding that "because the [d]efendant is still recovering from COVID-19, he could pose a danger to the community if he were released," and denying the defendant's motion to revoke his detention order).

[30] Doc. 45-1 at 2.

[31] *See United States v. Seymon*, No. 11-CR-10040-JES, 2020 WL 2468762, at *4 (C.D. Ill. May 13, 2020) ("The Court does not seek to minimize the risks that COVID-19 poses to inmates in the BOP," however, "the mere presence of COVID-19 in a particular prison cannot justify compassionate release – if it could, every inmate in that prison could obtain release.").

### C. Section 3553(a) Factors

The Court must consider whether reducing Birdsong's sentence to time served would comply with the familiar sentencing factors enumerated in 18 U.S.C. § 3553(a). That statute requires courts to "impose a sentence sufficient, but not greater than necessary" in consideration of the following factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;
> (5) any pertinent policy statement . . . issued by the Sentencing Commission . . .;
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.[32]

While the Court takes all seven § 3553 factors into account, those most pertinent to Birdsong's case are the nature and circumstances of the offense and the history and characteristics of the offense, the need for the sentence imposed to reflect the seriousness of the offense, and the need to provide adequate deterrence. In consideration of these factors, the Court concludes that releasing Birdsong now would not leave him with a sentence that is "sufficient, but not greater than necessary."[33]

---

[32] 18 U.S.C. § 3553(a).

[33] *Id.*

9

Pursuant to a binding plea agreement, Birdsong is currently serving a 144-month sentence with a five-year supervised release term, well below his Guidelines range of 210–262 months.[34]  Birdsong pled guilty to the serious offense of conspiracy to distribute and possess with intent to distribute more than 500 grams of methamphetamine.  This offense was not Birdsong's first felony—his prior felony convictions include possession of methamphetamine and eluding police officers—resulting in a substantial criminal history category V classification.[35]  Birdsong was deemed responsible for 10.21 kilograms of methamphetamine in this case.[36]  Further, on the day of Birdsong's arrest, law enforcement officers executed a search warrant at his residence and recovered, among other things: a drug ledger, four digital scales, two firearms—one of which had been reported stolen—and large quantities of ammunition, some methamphetamine, prescription pills, and five glass smoking pipes.[37]

Reducing Birdsong's sentence to time served would not reflect the seriousness of his criminal conduct.  Nor would it provide adequate deterrence or appropriate punishment.  The Court finds that the 144-month sentence originally imposed remains sufficient, but not greater than necessary, to meet the sentencing factors in § 3553(a) and punish the offense involved.  Accordingly, his motion is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Jerome Birdsong's Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) (Doc. 45) is **DENIED**.

**IT IS SO ORDERED.**

Dated: December 11, 2020

---

[34] Doc. 33 ¶ 75.

[35] *Id.* ¶ 50.

[36] *Id.* ¶ 21.

[37] *Id.* ¶¶ 9–15.

                                                        S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE